**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| BLANCA KLING, | * |
| **Plaintiff,** | * |
| | * |
| v. | *  **Case No.: PWG-15-2866** |
| | * |
| MONTGOMERY COUNTY, MARYLAND | * |
| **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Blanca Kling is employed as the Hispanic Liaison for the Montgomery County Police Department ("Montgomery Police"), a subdivision of Defendant Montgomery County, Maryland ("Montgomery County"). She has brought two claims against Montgomery County under the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) (the "EPA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 ("Title VII"), alleging that she is paid less for equal work than a male counterpart. Montgomery County has filed a motion to dismiss on the grounds that (1) this Court lacks jurisdiction to hear Kling's claims because she did not exhaust her administrative remedies and (2) she has failed to state a claim. *See* Def.'s Mot., ECF No. 14.[1] Because Kling has exhausted her administrative remedies, Montgomery County's motion to dismiss under Fed. R. Civ. P. 12(b)(1) will be denied. Because Kling has pleaded facts sufficient to support her EPA claim, I will deny Montgomery County's motion to

---

[1] Incorporated into Montgomery County's motion to dismiss is a memorandum of law. Kling has filed an opposition, Opp'n, ECF No. 15, and Montgomery County has filed a reply, Reply, ECF No. 16. Montgomery County also filed a supplement to its reply, Suppl. Reply, ECF No. 17, stating several objections to certain of Kling's exhibits contained in the parties' joint record, Jt. Rec., ECF No. 18. The motion to dismiss is ripe for review. A hearing is unnecessary in this case. *See* Loc. R. 105.6.

dismiss with respect to this claim. However, because Kling has failed to plead any connection between her sex and her unequal pay allegations, I will grant Montgomery County's motion to dismiss with respect to her Title VII claim.

## I.    BACKGROUND

Kling filed her complaint on September 22, 2015, *see* Compl., ECF No. 1., and amended her complaint on January 4, 2016, *see* Am. Compl., ECF No. 13. Kling started work in her current position as the Hispanic Liaison for Montgomery Police approximately eight years ago. *Id.* ¶ 6–7. At the time she was transferred from the 4th District of Montgomery Police, she was a "Client Assistant Specialist (Grade 20) at District 4 level. In that new position (which was not previously classified), she served in her current position as a Client Assistant Specialist." *Id.* "This position was never formally established, and Ms. Kling kept her position description for a Client Assistant Specialist Grade 20." *Id.* ¶ 24. On May 7, 2013, "Kling was wrongfully downgraded from a Client Assistant Special to a Program Specialist I (Grade 18)." *Id.* ¶ 9. This downgrade is impending but not yet active. *See id.* ¶ 14; Def.'s Mot. 3[2]

Kling states that her "work is more similar to the work performed by Luis Martinez in the County Department of Health and Human Services than the work performed by a Program Specialist I. Mr. Martinez is classified as Grade 25, and, like Ms. Kling, is the Hispanic liaison for his department." Am. Compl. ¶ 11. Kling states that the salary range for a Grade 20 position

---

[2]    Kling does not dispute that the downgrade from Grade 20 to Grade 18 has not been implemented. As a result, it is not clear what injury, if any, Kling has currently suffered with respect to this downgrade. Therefore, I will treat Kling as only alleging EPA and Title VII claims for unequal pay with respect to her Grade 20 pay scale status and doing work substantially equal to Martinez, who has Grade 25 pay scale status. Should Kling's downgrade go into effect, I will consider permitting her to amend her complaint to reflect the downgrade, or she would remain free to bring a separate suit regarding the downgrade.

starts at $47,867 with a maximum of $79,081 and the salary range for a Grade 25 position starts at $60,371 with a maximum of $100,150. *Id.* ¶ 13.

Kling's work as the Hispanic community liaison falls into six categories: (1) spokesperson and media communication; (2) advisory role with community feedback; (3) community outreach; (4) victim assistance; (5) partnership with other county departments and agencies; and (6) assistance with police investigations. *See id.* at ¶ 31. In her amended complaint, Kling compares her duties and responsibilities to Martinez's in considerable detail:

| Blanca Kling's Responsibilities | Luis Martinez's Responsibilities |
|---|---|
| Conducts effective outreach by employing a variety of means to achieve goal of getting message across to the Hispanic community. This includes:<br>• disseminating information about police programs to the Hispanic community;<br>• serving as the Police Department spokesperson to the Hispanic media outlets;<br>• promoting Police Department enforcement campaigns to the media;<br>• coordinating and planning press conferences;<br>• arranging interviews between the Police Department and the media;<br>• producing radio and television programs to bring information to the community about different Police Department services and other community issues;<br>• representing the Police Department on committees and before the public;<br>• attending meetings hosted by the school system, faith based organizations, and other groups to speak about issues like internet safety, using 9-1-1, and bullying; and<br>• building trusting partnerships with the Hispanic community so information on crimes may be given anonymously or confidentially. | Conducts effective outreach by employing alternative as well as traditional methods to achieve goal of getting message across to widest audience. This may include:<br>• presenting information on DHHS services to ethnic minorities;<br>• providing support to most service areas for the reproduction and review of materials in multilingual format;<br>• coordinating DHHS's presence at health fairs and events to which DHHS is invited;<br>• assisting with a presentation to a foreign delegation;<br>• organizing special workshops, presentations, or seminars to outreach to community;<br>• participating in forums and public conversations dealing with diversity issues; and<br>• responding to radio and television invitations to bring information to the community about different DHHS services. |
| Ensures that the outreach strategies contribute to the Department's goals, and adapts these strategies to meet the new and changing needs of the Police Department. Coaches Police Officers to be interview in TV, print and radio stations | Reviews the Department's Outreach Plan to analyze and makes adjustments to reflect most updated departmental goals. This includes:<br>• updating the DHHS's performance measures;<br>• following and adapting the Outreach Plan; and |

| | |
|---|---|
| | • working with the Office of Planning, Accountability, and Customer Services to analyze how to best measure the impact of DHHS's outreach. |
| Promotes Police Department enforcement campaigns to the Hispanic media, and works with various County agencies to promote their different events and activities. Advertises and encourages participation in these events via radio, television, and print media. | Maintains an updated online DHHS Calendar of Events as a way to share outreach opportunities internally as well as with other county counterparts. |
| Works with and assist officers in the Police Department, including the Chief, to arrange interviews with the Hispanic media, including to understand police roles and current information. | Organization and implementation of internal cross training for DHHS employees who regularly do outreach in the community, in order to help employees whose major responsibilities is outreach to better understand the wide spectrum of program and services available to county residents. |
| Ensures Police Department representation and active participation on well-established network and coalition groups to promote information sharing between the Police Department and the Hispanic community. This includes: <br>• disseminating information about police programs that benefits the relationship between the Hispanic community and Police Department, such as the recruitment of police officers, the Police Ride-Along Program, and the Police Explorer Program; <br>• working with department and agency representatives to plan programs, services, and events for the Hispanic community on behalf of the Department; <br>• working with the Hispanic Liaison for the County Executive and the Office of the County Public Information Office to disseminate information about a new Violent Crime Law; <br>• attending meetings hosted by the school system, faith based organizations, and the Literacy Council of Montgomery County, and many other groups to speak about issues like bullying, domestic violence, and gangs; <br>• creating the monthly agenda for the Chief of Police for his Latino Liaison Committee; and <br>• constantly communicating with leaders who attend the Latino Liaison Committee meetings. | Ensures DHHS representation and active participation on well-established network and coalition groups to promote information sharing amongst provider communities. This includes: <br>• regularly attending meetings of provider coalitions, such as the Upcounty Latino Network, School and Community United in Partnership, and Community Outreach Forum, to facilitate two-way sharing of information; and <br>• disseminating information via email to community networks and internet postings. |
| Creates, plans, and produces Hispanic educational radio and television program and public service announcements. Creates | Research and develop user-friendly outreach materials and resources to meet the needs of an increasingly diverse constituency. This includes: |

| | |
|---|---|
| informational materials for print and broadcast media, departments, and agencies. Trains and coaches officers attending radio and TV interview. | producing and distributing the "Guides to Community Services" in four languages; distributing existing multilingual materials at different events; and assisting in translating and reviewing new outreach materials. |
| Utilizes bilingual and bicultural skills to assist in all aspects of linguistic and cultural competency initiatives undertaken by the Police Department. This includes: <br> • assisting officers and detectives in their investigations because of the language barrier and difficulty obtaining cooperation from Hispanic victims; <br> • assisting detectives with an investigation of an Immigration scam targeting undocumented, Hispanic victims, and a loan and mortgage scam involving 20 Hispanic victims; <br> • responding to requests for information from all media sources; <br> • coordinating publicity for Hispanic press conferences and special events; and <br> • disseminating information to viewers via radio and television programs. | Utilize bilingual and bicultural skills to assist in all aspects of linguistic and cultural competency initiatives undertaken by the Office and the Department. This may include: <br> • assisting with translating and reviewing documents in Spanish, or finding translators; <br> • assisting with interpretation services for a case or when speaking to a client; <br> • organizing seminars and presentations for Spanish-speaking citizens; <br> • finding reviewers in other languages for already-translated documents; and <br> • attending county and regional meetings related to linguistic access policies. |
| Performs other assignments and duties as requested by the supervisor to meet the strategic goals and objectives of the Police Department. This includes: <br> • encouraging transparency of the Department by arranging interviews for the Hispanic media with the Chief of Police, members of the Command Staff, and other officers; <br> • providing assistance to victims of crime in the Hispanic community and referring them to appropriate resources; <br> • organizing and coordinating press conferences to ask for the public's help in solving certain crimes; and <br> • relaying information being discussed in the Hispanic community to the Chief and Department personnel that may hinder the Department's mission with the community; and <br> • reaching out to the community to calm their fears regarding new laws, such as a Violent Crime Law and the "Secure Communities" program. | Perform other assignments and duties as requested by the supervisor to meet the strategic goals and objectives outlined by the office and the department. This includes: <br> • acting as contract monitor for CASA bilingual medical hotline; <br> • being involved in department-wide initiatives; and <br> • always being available, cooperative, flexible and responsive to requests for support from supervisor. |

*Id.* ¶ 47.[3]  Based on this comparison, Kling alleges that "Ms. Kling and Mr. Martinez hold jobs that require equal skill, effort, and responsibility", *id.* ¶ 63, and that their "jobs are performed under similar working conditions, *id.* ¶ 64.

Kling further alleges that "Plaintiff has exhausted any and all administrative remedies, including filing a charge of discrimination with the [Equal Opportunity Employment Commission ("EEOC")] before filing suit.  The EEOC issued and mailed a right to sue letter on June 23, 2015." *Id.* ¶ 5.

## II.  DISCUSSION

### A.  Standard

#### 1.  *Fed. R. Civ. P. 12(b)(1)*

"'[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies.'" *Murphy v. Adams*, No. DKC-12-1975, 2014 WL 3845804, at *7 (D. Md. Aug. 4, 2014) (quoting *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013)).  On this basis, Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1).  In considering Defendants' motion, "the Court may . . . consider matters beyond the allegations in the complaint" because Defendants assert that "the jurisdictional allegations in the complaint are not true." *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *3 (D. Md. Aug. 6, 2010); *see Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  The Court "regard[s] the pleadings' allegations as mere evidence on the issue," and its consideration of additional evidence does not "convert[] the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac Ry. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see Adams*, 697 F.2d at 1219 ("A trial court may consider evidence by

---

[3]     The chart comparing Kling's and Martinez's responsibilities has been reproduced verbatim in its entirety.

affidavit, depositions or live testimony without converting the proceeding to one for summary judgment.").

When a defendant challenges subject matter jurisdiction, the burden is on the plaintiff to prove that subject matter jurisdiction exists. *See Evans v. B.F. Perkins, Co*., 166 F.3d 642, 647 (4th Cir. 1999); *El-Amin v. Int'l Longshoremen's Ass'n Local No. 333*, No. CCB-10-3653, 2011 WL 2580630, at \*2 (D. Md. June 28, 2011). "A court should grant a Rule 12(b)(1) motion 'if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *El-Amin*, 2011 WL 2580630, at \*2 (quoting *Evans*, 166 F.3d at 647). To exhaust her administrative remedies, Plaintiff must "bring[] a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *see Jones v. Calvert Group, Ltd*., 551 F.3d 297, 300 (4th Cir. 2009).

### 2. *Fed. R. Civ. P. 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at \*4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,"

*Iqbal*, 556 U.S. at 678–79.  *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  I must accept the facts as alleged in Plaintiffs' complaint as true.  *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).  If the documents that the Court considers exceeds this scope, the Court must treat the motion as a motion for summary judgment.  Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620, 623 (D. Md. 2013).  In considering Montgomery County's motion to dismiss, I have only looked at those exhibits attached to the parties' filings with respect to this motion that are integral to the amended complaint and the authenticity of which has not been disputed.  *See* Jt. Rec.

## B.  Analysis

### 1.  *Administrative Exhaustion*

Kling's amended complaint alleges that she "has exhausted any and all administrative remedies, including filing a charge of discrimination with the [EEOC] before filing suit.  The EEOC issued and mailed a right to sue letter on June 23, 2015."  Am. Compl. ¶ 5.  Montgomery County contends that Kling's claims should be dismissed because "Plaintiff does not allege <u>when</u> she filed a charge with the EEOC, and, since this date is determinative of what actions may be actionable, Plaintiff still [after amending her complaint] has not shown that she has exhausted her remedy."  Def.'s Mot. 7.

Montgomery County's argument is wholly without merit.  It cites absolutely no support for its position that failure to plead the date of filing the EEOC charge is sufficient to support a motion to dismiss under Fed. R. Civ. P. 12(b)(1).  *See id.* at 14–15; Reply 1–2.  Instead, it cites the following: the statute, 42 U.S.C. § 2000e-5(e)(1), which sets the deadline for filing a charge; *Chan v. Montgomery Cty. Md.*, No. AW-12-1735, 2013 WL 1773574, at *2 (D. Md. Apr. 24, 2013), which found that "[a]llegations based on incidents that take place more than 300 days after the alleged discriminatory event are entitled to no weight for the purposes of ruling on a motion to dismiss;" and *Lopez v. BMA Corp.*, No. DKC-13-2406, 2013 WL 6844361, at *7 (D. Md. Dec. 24, 2013), which states "only those discriminatory acts which occurred within 300 days of [the date on which the plaintiff filed an EEOC charge] are timely filed."  *See* Def.'s Mot. 6–7.  The statute and cases cited by Montgomery County, however, set deadlines for the filing of a charge with respect to the unlawful employment practice, not what is required to be specified in a pleading in order to establish exhaustion of her administrative remedies.  To the contrary, this Court has found that it is unnecessary for a plaintiff to plead the receipt of a right to sue letter, much less the actual date when plaintiff filed a charge with the EEOC.  *See Barkhorn v. Ports America Chesapeake, LLC*, No. JKB-10-750, 2011 WL 4479694, at *2–3 (D. Md. Sept.

26, 2011) (finding that it was not necessary for plaintiffs to plead that they received a right to sue letter).

Further, the standard for dismissal under Fed. R. Civ. P. 12(b)(1) that Defendant cites recognizes that the district court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Def.'s Mot. 4 (quoting *Richmond, Fredericksburg & Potomac Ry.*, 945 F.2d at 768)). Yet, Montgomery County objects to the inclusion of Exhibits 1 through 4, *see* Suppl. Reply, which include documents filed before the EEOC and the EEOC right to sue letter, *see* Jt. Rec. 1–41. Montgomery County cites to *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007), for support of its argument that I should only consider documents attached to Kling's amended complaint or incorporated by reference in her amended complaint, but the portion of *Trimble* cited by Montgomery County clearly refers to the standard for dismissal under Fed. R. Civ. P. 12(b)(6), not the standard for dismissal under Fed. R. Civ. P. 12(b)(1). *See id.* ("We review de novo a district court's dismissal for failure to state a claim *under Federal Rule of Civil Procedure 12(b)(6)*.") (emphasis added). Kling has attached the EEOC right to sue letter to her opposition, clearly indicating the date when the charge was filed. *See* Jt. Rec. 41. Despite this, Montgomery County obdurately insists (1) that Kling's claims should be dismissed for failure to exhaust her administrative remedies in its reply, *see* Reply 1–2, and that (2) this Court should not consider the right to sue letter attached to Kling's opposition, Suppl. Reply 1–2.

Moreover, Montgomery County's position is all the more indefensible given that its representatives participated in the EEOC proceedings, *see id.* 39–40, and received a copy of the right to sue letter, *see id.* at 41. This Court has previously found "[i]t is at least somewhat disingenuous for [the defendant] to claim this Court lacks jurisdiction because of a pleading

technicality when, in fact, its counsel has been in possession of the very document at issue." *See*

*Barkhorn*, 2011 WL 447964, at *3.  Although Kling's right to sue letter was mailed to Kathryn

Lloyd, Associate County Attorney, Montgomery County's counsel of record in this case is a

member of that same office, located at the same address and on the same floor.  For these

reasons, I will deny Montgomery County's motion to dismiss for failure to exhaust

administrative remedies under Fed. R. Civ. P. 12(b)(1).  In making this ruling, I cannot escape

the conclusion that Montgomery County's arguments with respect to this issue are disingenuous,

frivolous, and may constitute a lack of candor to the court.  *See* Md. Rule of Prof. Conduct 3.3.

Further, its position lacked legal justification and likely imposed unnecessary burden and

expense upon Plaintiff, who had to address Montgomery County's unmeritorious arguments.

Accordingly, I will order Montgomery County to show cause why Plaintiff should not be

permitted to seek sanctions under Fed. R. Civ. P. 11 should she wish to do so for the costs

associated with researching and briefing the exhaustion of administrative remedies argument.

   *2. EPA Claim*

   Kling has alleged that Montgomery County violated the EPA with respect to her

compensation relative to Martinez.

> This Court has held that in order to establish a *prima facie* case under the Equal
> Pay Act, the plaintiff bears the burden of showing that she (1) receives lower pay
> than a male co-employee (2) for performing work substantially equal in skill,
> effort, and responsibility under similar working conditions. The comparison must
> be made "factor by factor with the male comparator."

*Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 948 (4th Cir. 1995) (quoting *Houck v.*

*Virginia Polytechnic Institute,* 10 F.3d 204, 206 (4th Cir.1993)).

> The touchstone of the equal work analysis is whether the work is "substantially
> equal." If the jobs to be compared have a "common core" of tasks, i.e., significant
> portions of the two jobs are identical, the inquiry turns on whether the differing or
> additional tasks require greater skill or responsibility. Skill is a function of
> experience, training, education, and ability, and is measured in terms of the

"performance requirements" of the job. Responsibility measures, among other things, the degree of "accountability" to higher-ups.

*Hassman v. Valley Motors, Inc.*, 790 F. Supp. 564, 567–68 (D. Md. 1992) (internal citations omitted); *see also Alexander v. Marriott Intern., Inc.*, No. RWT-09-2402, 2011 WL 1231029, at *4 (D. Md. Mar. 29, 2011); *Reece v. Martin Marietta Techs., Inc.*, 914 F. Supp. 1236, 1241 (D. Md. 1995).

If the plaintiff is able to establish a *prima facie* case, the

the burden then shifts to the employer to prove, by a preponderance of evidence, that the pay differential is justified by the existence of one of the four statutory exceptions set forth in § 206(d)(1): (1) a seniority system, (2) a merit system, (3) a system that measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex.

*Strag*, 55 F.3d at 948 (citing Houck, 10 F.3d at 207).

Kling has pleaded sufficient facts to support her *prima facie* case under the EPA. With respect to the first element, that she receives lower pay than a male co-employee, she has pleaded her pay scale is Grade 20 while Martinez, a man, has a Grade 25 pay scale. Although she has not alleged their respective specific salaries, the salary ranges are significantly different, *see* Am. Compl. ¶ 13, which is sufficient to survive a motion to dismiss without having had the opportunity to obtain the benefits of discovery on Martinez's exact salary.[4]

With respect to the second element, that she "perform[s] work substantially equal in skill, effort, and responsibility under similar working conditions," Kling's pleadings are sufficient to survive a motion to dismiss. Kling has provided a meticulously detailed chart comparing her responsibilities with Martinez's, *see id.* ¶ 47, as well as a detailed description of their additional responsibilities, *see id.* ¶¶ 49–55, demonstrating that their work is substantially equal with a

---

[4] If, after discovery commences, documentation reveals that Martinez does not in fact have a higher salary than Kling, Montgomery County may follow the procedures set forth in my Case Management Order, ECF No. 3, for requesting a conference call to request permission to file a motion for reconsideration of this memorandum opinion and order under Fed. R. Civ. P. 54(b).

common core of shared tasks.  To be sure, there are some differences between Kling's and Martinez's duties, where certain of Martinez's (e.g., "cross training for [Health and Human Services] employees," *id.* ¶ 47) may require greater skill or responsibility.  At the same time, certain of Kling's duties (e.g., "produce radio and television programs to bring information to the community," *id.*) may require greater skill or responsibility than Martinez's.  When viewed in its totality, I find that Kling has pleaded sufficient facts to establish the second element that she is "performing work substantially equal in skill, effort, and responsibility under similar working conditions" as Martinez.

Montgomery County also has challenged whether Kling and Martinez work in the same "establishment."  *See* Def.'s Mot. 9–10; Reply 5–7.  However, it has not provided any Fourth Circuit authority for its argument.  Kling and Martinez both work for Montgomery County, although Kling works directly with Montgomery Police and Martinez works directly with the Health and Human Services Department.  The core component of Kling's allegation is that she and Martinez perform virtually identical work, albeit for separate divisions of Montgomery County, as demonstrated from a comparison of two employees' responsibilities.  The Fourth Circuit has endorsed the approach of examining the actual responsibilities of the plaintiff and the comparator.  *See Wheatley v. Wicomico Cty., Md.*, 390 F.3d 328, 332–34 (4th Cir. 2004) ("declin[ing] to hold that having a *similar* title plus *similar* generalized responsibilities is equivalent to having *equal* skills and *equal* responsibilities" because a comparison of directors from different departments of a county demonstrated different skills and responsibilities).  In this case, however, Kling successfully pleaded the substantially equal skill, effort, and responsibility

through a comparison of Kling's and Martinez's actual duties, and therefore the finding in *Wheatley* does not apply to this case.[5]

Finally, Montgomery County argues that "Plaintiff alleges that Defendant uses a complex classification system" and that therefore the pay differential is justified. *See* Def.'s Mot. 10–11. As discussed above, it is true that the employer can rebut the plaintiff's *prima facie* case by demonstrating that the pay differential is justified by "(1) a seniority system, (2) a merit system, (3) a system that measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex." *See Strag*, 55 F.3d at 948. However, Montgomery County has not explained how the pay grade scale that it has adopted falls under one of the statutory exceptions in 29 U.S.C. § 206(d)(1). Instead, it (correctly) cites *Oguezuonu v. Genesis Health Ventures, Inc.*, 415 F. Supp. 2d 577, 589 (Md. 2005), for the finding that the "EPA specifically exempts pay differences based on seniority," *see* Def.'s Mot. 11, but fails to connect this finding based on a seniority system to Montgomery County's pay scale system. Accordingly, Montgomery County has not carried the burden of proving that the pay differential is justified.

For these reasons, I will deny Montgomery County's motion to dismiss Kling's EPA claims.

### 3.  Title VII Claim

Kling also brings a Title VII Claim based on the same facts.

The sex discrimination provisions of Title VII and the EPA are construed in harmony. The same three elements of a *prima facie* case must be established, and the same four affirmative defenses are applicable. Whereas the EPA creates

---

[5]     To the extent that reasoning in *Wheatley* does apply to this case, it supports Kling's position that department directors from different departments can be valid comparators if the directors perform substantially equal work because the Fourth Circuit examined the actual responsibilities of the directors and did not find against the plaintiff purely on the basis of the comparators working in different departments. *See Wheatley*, 390 F.3d at 332–34.

a sort of "strict liability" for discrimination on the basis of sex, Title VII requires
a showing of some sort of "discriminatory intent."

*Hassman*, 790 F. Supp. at 568–69 (internal citations omitted); *see also Brewster v. Barnes*, 788

F.2d 985, 993 n.13 & n.14 (4th Cir. 1986).   "Under Title VII, a *prima facie* case of sex

discrimination requires showing a connection between sex and the adverse employment

decision."  *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994); *see also*

*Reece*, 914 F. Supp. at 1245–46 ("A *prima facie* case of sex discrimination under Title VII

requires 'showing a connection between sex and the adverse employment decision.'").   "The

burden of establishing a *prima facie* case of disparate treatment is not onerous."  *Brinkley-Obu*,

36 F.3d at 343 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)) (internal

quotation marks omitted).   Nevertheless, Kling has failed to allege any connection between her

sex and her unequal pay allegations.   For this reason, Kling has not established a *prima facie*

case for her Title VII claim, and I will grant Montgomery County's motion to dismiss with

respect to this claim.

## III.   CONCLUSION

For the reasons stated above, I will GRANT IN PART and DENY IN PART Defendant's

motion to dismiss.

## <u>ORDER</u>

Accordingly, it is this 20th day of July, 2016, hereby ORDERED that Defendant

Montgomery County's motion to dismiss, ECF No. 14, is GRANTED in part and DENIED in

part as follows:

1.   Defendant's motion to dismiss with respect to Plaintiff's Title VII wage discrimination

   claim IS GRANTED;

2.   Defendant's motion to dismiss with respect to Plaintiff's EPA claim IS DENIED; and

3.  Montgomery County shall show cause by August 10, 2016, why Plaintiff should not be permitted to seek sanctions for violations of Fed. R. Civ. P. 11, should she wish to do so, based on Montgomery County's frivolous argument that Plaintiff did not sufficiently plead exhaustion of administrative remedies.

So ordered.

_____/S/_____
Paul W. Grimm
United States District Judge

dpb